**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| K. S.; et al., | No. 10-15099 |
| Plaintiffs - Appellants, | D.C. No. 3:06-cv-07218-SI |
| v. | |
| FREMONT UNIFIED SCHOOL DISTRICT, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted March 14, 2011
San Francisco, California

Before: PAEZ, BERZON, and BEA, Circuit Judges.

In this Individuals with Disabilities Education Act ("IDEA") lawsuit, K.S.

appeals the district court's grant of summary judgment in favor of the defendant

Fremont Unified School District (the "District").

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

To be eligible for federal education funding, the IDEA requires a state to have policies and procedures in place to ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State." 20 U.S.C. § 1412(a)(1)(A). The IDEA does not require that the state adhere to any particular educational approach. *See Adams v. Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999). Rather, the IDEA requires that the state's program provide specialized instruction "supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 189 (1982).

1. K.S. first contends that the district court erred in giving deference to the ALJ's 40-page original decision and subsequent 29-page remand decision. Specifically, K.S. alleges that the district court acted as a "rubber stamp" with regard to the administrative law judge's ("ALJ") credibility determinations and findings that K.S. made meaningful progress in achieving the educational and occupational goals established in K.S.'s individualized education plans ("IEPs") for the years in question. We conclude, however, that the district court did not abuse its discretion by giving due weight to the detailed decisions of the ALJ. *See Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891–92 (9th Cir. 1995). Here, the ALJ found that the District's IEPs were consistent with IDEA's objectives because they were effectively tailored to K.S.'s unique needs, and were

2

based upon accepted teaching principles in the field of autism education. These findings are consistent with the opinions of several of the experts who testified at the administrative hearings that K.S.'s IEPs were appropriate and resulted in meaningful benefit for K.S. given her cognitive impairment. *See, e.g.*, Testimony of Dr. Bryna Siegel Admin. R. at 4271–72.

2.     Next, K.S. argues that K.S.'s IEPs failed to provide a "meaningful" benefit as required by the IDEA. *See J.L. v. Mercer Island Sch. Dist.,* 592 F.3d 938, 951 (9th Cir. 2010) ("The proper standard to determine whether a disabled child has received a free appropriate education is the 'educational benefit' standard set forth by the Supreme Court in *Rowley*."). In light of all the record evidence, the district court's findings are sufficient to support its conclusion that the District's IEPs provided "some educational benefit" for K.S. given her severe cognitive impairment. *Rowley*, 458 U.S. at 200–01; *see also Adams*, 195 F.3d 1149–50. Stated differently, the record evidence supports the district court's conclusion that K.S.'s IEPs addressed her unique educational needs and provided appropriate goals to achieve some educational benefit. *See* 20 U.S.C. § 1414(d).

3.     K.S. also contends that the district court overlooked the District's failure to assess her cognitive capacity. This argument lacks merit, as the record evidence demonstrates that the District attempted to assess K.S.'s cognitive ability but was

3

unable to do so because of her distractibility and her limited ability to maintain social interaction. Contrary to K.S.'s argument, the evidence shows that the IEP teams were aware of K.S.'s cognitive impairment, and properly accounted for her limited cognitive abilities in developing her IEPs.

4. K.S. contends an IQ score is a "legal prerequisite" to a determination that a student is cognitively impaired. Thus, K.S. argues that because neither the district nor her private testers were able to obtain an IQ score for her, the ALJ's determination that K.S. was cognitively impaired and could not make greater progress towards her IEP goals was legal error. This contention is without legal basis. The ALJ's determination that K.S. had a cognitive disability was valid based on expert testimony, her results on alternative cognitive tests, her IEPs, and her progress reports from school. *See* 20 U.S.C. § 1414(b)(2)(B) (local education agency "shall not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child").

5. K.S. argues that the District's educational program, as reflected in the IEPs, violated the IDEA because it was not based on Applied Behavior Analysis therapy techniques. In *Adams*, we found that an eclectic approach similar to the one used by the District here met the IDEA's substantive requirements. *See Adams*, 195

4

F.3d at 1145. We need not decide whether the District made the best decision or a correct decision; we need only decide whether its decision satisfied the requirements of the IDEA. In doing so, we "must be careful to avoid imposing [the court's] view of preferable education methods upon the State." *Rowley*, 458 U.S. at 207. Given the deference we must extend to school officials to tailor an educational program to the needs of the child, we conclude that the District's IEPs met the IDEA's substantive requirements. *See J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 450 (9th Cir. 2010).

6.      K.S. argues that the district court's remand order was legal error because it contravened the "snapshot rule" recognized in *Adams*. Specifically, K.S. contends that the remand order allowed the ALJ to use findings from the 2009 hearing to conclude that, during the relevant years at issue, K.S. had a cognitive impairment. We disagree. In *Adams*, we considered whether the district court erred in using a student's *subsequent* progress as a measure of an IEP's adequacy. 195 F.3d at 1149. Here, neither the district court nor the ALJ relied upon any subsequent progress by K.S. to determine whether K.S.'s IEPs were appropriate. Rather, the court's and the ALJ's findings regarding K.S.'s cognitive capacity were based on the documentary and testimonial evidence from the school years at issue.

Accordingly, we conclude that the district court did not err in remanding K.S.'s case to the ALJ for further proceedings.

7.    Finally K.S. contends that the ALJ was biased.  As support for this argument, K.S. relies on the handwritten notes the ALJ took during the hearings. Contrary to K.S.'s assertion, there is nothing in the ALJ's notes to show that he exhibited bias toward K.S. or reached a final decision before the conclusion of the case.  Rather, the ALJ's notes simply detail his impressions during the hearings. Moreover, the ALJ's two detailed decisions demonstrate that his review of this case was thorough, well-reasoned, and supported by a preponderance of the record evidence.

AFFIRMED.